## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | |
|---|---|
| ERICA BERG, | |
|     Plaintiff, | No. 3:12-cv-00228 (MPS) |
|     v. | |
| MICHAEL SORBO, | |
|     Defendant. | |

### MEMORANDUM OF DECISION

In September 2009, Town of East Haven Police Officer Michael Sorbo arrested Erica Berg for "Interfering with an Officer," a misdemeanor offense, due in part to her interaction with a tow truck driver whom Officer Sorbo had summoned to a beach parking lot to tow illegally parked cars. In this civil rights action brought by Ms. Berg against Officer Sorbo, I must decide whether the undisputed facts show that arguable probable cause supported this arrest. Because the few undisputed facts show only that Officer Sorbo believed that Ms. Berg had asked the tow truck driver to wait until her supervisor arrived before continuing to carry out Officer Sorbo's towing orders, and because more is required to violate the "interfering" statute, a trial is necessary to determine whether Officer Sorbo had arguable probable cause to arrest Ms. Berg. I therefore deny Officer Sorbo's motion for summary judgment (dkt. # 46), except as to the conspiracy claim, which Ms. Berg has failed to support with admissible evidence.

## I.   Background

Ms. Berg brings the following causes of action against Officer Sorbo: claims under 42 U.S.C. § 1983 for false arrest and malicious prosecution in violation of the Fourth Amendment (Am. Compl., ¶¶ 2, 39), retaliation for exercising rights guaranteed by the First Amendment, and denial of equal protection of the laws in violation of the Fourteenth Amendment (*id.*, ¶¶ 2, 15, 35, 40, 42); claims under Connecticut state common law for false imprisonment, false arrest, malicious prosecution, defamation, and intentional infliction of emotional distress ("IIED") (*id.*,

¶¶ 2, 43-45); and a claim alleging that Officer Sorbo "conspired" against her with other individuals who were previously Officer Sorbo's co-defendants (*id.*, ¶¶ 1, 15, 33).[1]

Officer Sorbo's liability as to virtually all of the claims turns on whether he had probable cause to arrest Ms. Berg for violation of Conn. Gen. Stat. § 53a-167a and whether he is entitled to qualified immunity with regard to his probable cause determination.

## II.    Relevant Facts

Except as otherwise noted, the record includes the following undisputed facts.  On July 19, 2009, Officer Sorbo was assigned to beach patrol duty.  This assignment included responsibility for managing a public parking lot located near the beach and next to a parking lot for the Sandpiper restaurant.  Due to limited parking availability, cars began to park in the public parking lot in a haphazard manner, eventually blocking the entrance and exit to the lot.  Citizens approached Officer Sorbo to complain about their cars being blocked and to express concern that, in order to exit, some cars were driving over an adjacent playground and sidewalk where children were playing.

After assessing the situation, Officer Sorbo determined that a public safety issue existed that needed to be addressed immediately.  He ticketed six vehicles that were blocking the exits and called the East Haven police station to request that tow trucks be ordered to remove the six ticketed vehicles.  Multiple tow trucks subsequently arrived at the parking lot and began towing the vehicles.

While the towing was in progress, Ms. Berg and her boss, the then mayor of East Haven, April Capone Almon, drove into the public parking lot in Ms. Berg's car.  They had made a

---

[1] After oral argument on March 11, 2014, the Court granted summary judgment to Defendants Miller, Gallo, and Maturo for, among other things, lack of personal involvement in the alleged deprivation of Ms. Berg's rights, and to the Town of East Haven because Ms. Berg had failed to show a municipal custom or policy sufficient to prove a *Monell* claim.  With Ms. Berg's consent, her claims against the John Doe officers were dismissed.

spontaneous decision to dine at the Sandpiper.  At this time, Ms. Berg was employed as a "confidential assistant in the office of the mayor."  When the two women arrived at the public parking lot, they saw a scene that Ms. Berg described as "chaotic."  Citizens who were in the parking lot and distressed that their vehicles were being towed spoke with Ms. Berg and Mayor Capone Almon.

Ms. Berg has since agreed that the vehicles obstructing the exit needed to be moved, but she disagreed with the means Officer Sorbo employed to accomplish this objective.  After speaking with the families, Ms. Berg approached one of the tow truck drivers, John Conway, and had a brief conversation with him about the vehicle he was towing.  The content of this conversation is in dispute.  According to Officer Sorbo, who did not hear the conversation but later interviewed Mr. Conway about it, Ms. Berg asked Mr. Conway not to leave with the vehicle he had in tow because the mayor was on her way.  According to Mr. Conway, who submitted an affidavit in support of Officer Sorbo's motion for summary judgment, Ms. Berg asked Mr. Conway to "drop" the vehicle he was towing and then instructed him not to leave the parking lot until the mayor arrived.  According to Ms. Berg, she asked Mr. Conway if it would be possible for him to "drop" the vehicle if the vehicle's owners paid the "drop fee," and did not make any mention of the mayor.

Shortly after the conversation between Ms. Berg and Mr. Conway, Mayor Capone Almon spoke with Mr. Conway, who told her that he felt obligated to follow Officer Sorbo's instructions to complete the towing of the vehicle.  The mayor asked to talk with Mr. Conway's supervisor, who, after speaking with the mayor, instructed Mr. Conway to drop the vehicle that he was towing and leave the parking lot.  Mr. Conway complied with these instructions and departed.

Officer Sorbo claims that he also observed Ms. Berg removing parking tickets from the illegally parked vehicles, an act Ms. Berg denies.  According to Officer Sorbo, he also observed Ms. Berg take a ticket from a woman after a brief conversation on the beach that took place after the towed vehicles had been returned to their owners.  Ms. Berg disputes this version of events; instead, she recalls the woman tearing up the ticket and throwing it in her face.

On July 22, 2009, Officer Sorbo prepared a case incident report about the events that took place in the parking lot.  The report included references to his interview of Mr. Conway and a second tow truck driver.  Over six weeks later, Officer Sorbo prepared a five-page affidavit in support of an arrest warrant application for the arrest of Ms. Berg and Mayor Capone Almon for "interfering with an officer" in violation of Conn. Gen. Stat. § 53a-167a.  This application was signed by State's Attorney Michael Dearington on September 3, 2009, and granted by Superior Court Judge Joseph Licarai, Jr. on September 4, 2009.  Ms. Berg and Mayor Capone Almon were arrested on the basis of this arrest warrant application.  Ultimately, the State did not pursue the charges against Ms. Berg, although the circumstances in which the charges were dropped are not clear from the summary judgment record.

III.    **Relevant Legal Principles**

    A.  **Section 53a-167a**

Officer Sorbo arrested Ms. Berg for committing a misdemeanor in violation of Conn. Gen. Stat. § 53a-167a, which states that "[a] person is guilty of interfering with an officer when such person obstructs, resists, hinders or endangers any peace officer . . . in the performance of such peace officer's . . . duties."  The statute "prohibits any action – whether verbal or physical – that is intended to meddle in or hamper the activities of the police in the performance of their duties."  *White v. Wortz*, 66 F. Supp. 2d 331, 333 (D. Conn. 1999) (*citing State v. Williams*, 205

Conn. 456, 471 (1987)); *see also State v. Williams*, 110 Conn. App. 778, 794 (2008) ("The language of § 53a-167a is intended to be broad.  By using those words it is apparent that the legislature intended § 53a-167a to prohibit any act which would amount to meddling in or hampering the activities of the police in their performance of their duties.").

Not every comment or question in response to a police officer's order, however, rises to the level of "meddling" or "hampering."  Although the statute "cover[s] some acts of verbal resistance as well as acts of physical resistance," "[t]he statute's requirement of intent limits its application to verbal conduct intended to interfere with a police officer and excludes situations in which a defendant merely questions a police officer's authority or protests his or her action." *Williams*, 205 Conn. at 471-72.  "To avoid the risk of constitutional infirmity," the Connecticut Supreme Court in *Williams* "construe[d] § 53a-167a to proscribe only physical conduct and fighting words that by their very utterance inflict injury or tend to incite an immediate breach of the peace." *Id.* at 473 (internal quotation marks omitted); *see also Ruttkamp v. De Los Reyes*, No. 10-cv-392, 2012 WL 3596064 (D. Conn. Aug. 20, 2012) ("Where the offending conduct is merely verbal, . . . the Connecticut Supreme Court has held that it does not constitute illegal interference to merely question a police officer's authority or protest his or her action.").

More recent Connecticut Supreme Court cases, including *State v. Aloi*, 280 Conn. 824 (2007), and *State v. Silva*, 285 Conn. 447 (2008), have not disturbed these principles.  Although the court in those cases reiterated that the words used in § 53a-167a "have a broad scope" and are meant "to prohibit *any* act which would amount to meddling in or hampering the activities of the police in the performance of their duties," *Aloi*, 280 Conn. at 833 (emphasis in original), the holdings in those cases are limited to the situation where the arrested individual states a refusal to show identification in violation of a police officer's direct command.  *Id.* at 841 n.22 ("Our

holding today is limited to a determination that a refusal to provide identifying information to a police officer in connection with a legitimate *Terry* stop may be sufficient to constitution a violation of § 53a-167a.  Although a refusal to comply with certain other types of lawful police commands or orders may provide a basis for prosecution under § 53a-167a, . . . for the purposes of this opinion we need not consider any factual scenario other than the scenario presented by the lawful *Terry* stop in the present case."); *Silva*, 285 Conn. at 455-56 (finding that *Aloi* controlled where the defendant refused to supply police officers with identifying information and vehicle registration, swore at the police officers, was loud and belligerent, and stamped her feet).

Connecticut's longstanding rule – one the *Williams* court drew from the principle of constitutional avoidance – thus remains that, apart from disobedience to a direct police command, § 53a-167a proscribes "only physical conduct and fighting words," and does not extend merely to raising questions about a police officer's actions.  205 Conn. at 473.  None of the cases relied on by Officer Sorbo are to the contrary.  *See White*, 66 F. Supp. 2d at 333 (violation of § 53a-167a where arrested individual knocked breathalyzer out of officer's hand when officer attempted to determine his level of intoxication, and struggled in effort to prevent officer from placing handcuffs on him); *Williams*, 110 Conn. App. at 795-96 ("The defendant's providing a false name to police is verbal conduct that is equivalent to the defendant's refusal to give identification to the police in *Aloi*, in that it hampered, or hindered, the ability of officers to perform their duties properly [and process the defendant's arrest], quickly and efficiently.").

### B.  Probable Cause

"Probable cause to arrest exists when the arresting officer has knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a

crime." *Escalera v. Lunn*, 361 F.3d 737, 743 (2d Cir. 2004). "[T]he existence of probable cause is a complete defense to a civil rights claim alleging false arrest or malicious prosecution." *Garcia v. Gasparri*, 193 F. Supp. 2d 445, 449 (D. Conn. 2002). "Whether probable cause existed is a question that may be resolved as a matter of law on a motion for summary judgment if there is no dispute with regard to the pertinent events and knowledge of the officer." *Weinstock v. Wilk*, 296 F. Supp. 2d 241, 246 (D. Conn. 2003).

When an individual is arrested after "the issuance of a warrant by a neutral magistrate judge," there is a "presumption that it was objectively reasonable for the officers to believe that there was probable cause . . . ." *Golino v. City of New Haven*, 950 F.2d 864, 870 (2d Cir. 1991). To overcome that presumption, the plaintiff must show that the affiant knowingly and intentionally, or with reckless disregard for the truth, made a material false statement or omission in his affidavit. *Id.* If this showing is made, and the plaintiff overcomes the presumption of probable cause, then the court must determine whether the officer is entitled to qualified immunity under the "corrected affidavit[] doctrine," where the court "look[s] to the hypothetical contents of a 'corrected' application to determine whether a proper warrant application, based on existing facts known to the applicant, would still have been sufficient to support arguable probable cause to make the arrest as a matter of law." *Escalera*, 361 F.3d at 743-44.

In making the qualified immunity inquiry, "a court should put aside allegedly false material, supply any omitted information, and then determine whether the contents of the 'corrected affidavit' would have supported a finding of arguable probable cause." *Id.* at 744. Arguable probable exists if the officer can show that "it was objectively reasonable for the officer to believe that probable cause existed" or "officers of reasonable competence could disagree on whether the probable cause test was met." *Id.* at 743.

**IV.**   <u>**Discussion**</u>

In this case, Officer Sorbo must establish qualified immunity under the corrected affidavit doctrine to prevail on summary judgment.  This is so because Ms. Berg has submitted evidence that raises a disputed issue of fact as to whether Officer Sorbo knowingly or recklessly misreported the events in the affidavit submitted in support of the application for her arrest warrant.  As noted above, in her deposition testimony, Ms. Berg disputed Officer Sorbo's version of events concerning the removal of tickets and Ms. Berg's interaction with the woman on the beach, among other things.  In addition, there is some evidence from which a reasonable juror could infer that Officer Sorbo harbored animus towards Mayor Capone Almon and Ms. Berg.

In July 2009, Officer Sorbo did not intend to arrest Ms. Berg or the mayor.  (Sorbo Dep. at 34:8-13.) [2]  But on September 1, 2009, some six weeks after the events in the parking lot and only days before he applied for an arrest warrant, Officer Sorbo requested permission to listen to the East Haven Police Department dispatch audio tapes relating to the July 19, 2009 events.  Those tapes included a recorded conversation between the mayor and the dispatch officer, in which the mayor said: "Why is Officer Sorbo towing cars? . . . I'll tell you and I'll have a talk with the Chief, but I have fucking had it with Officer Sorbo playing cute down here at the beach, I've had it dealing with this shit on a Saturday."  (Exhibit D, Supplemental Case Incident Report.)  They also included a conversation in which Mayor Capone Almon told Officer Sorbo "I'm turning you into the [C]hief . . . . [T]his is political just say yes m'am, say it." (*Id*.)  On September 3, 2009, shortly after listening to these recordings, Officer Sorbo applied for an arrest warrant for both Ms. Berg and Mayor Capone Almon.  From these facts, a reasonable juror could

---

[2] Asked when he decided to pursue an arrest warrant, Officer Sorbo testified as follows: "I went on a cruise, talked to my daughter, told her the story, and at that time I thought I was going to do a warrant. She said, Dad, you'll get more respect from the kids on the street than you did that day. I said okay, and I thought about it, and when I came . . . back to work, I thought about it some more and decided to do a warrant."  (Sorbo Dep. at 35:1-8.)

infer that Officer Sorbo sought the arrest warrant out of animus towards Ms. Berg, who was the mayor's assistant, and that the statements in the arrest warrant affidavit that conflict with Ms. Berg's deposition testimony were not just inaccuracies, but knowing or reckless falsehoods. Viewing the disputed facts in the light most favorable to Ms. Berg, as I must at the summary judgment stage, I find that Ms. Berg has presented evidence that permits an inference that Officer Sorbo acted recklessly or intentionally with regard to the truth of the statements in his affidavit. I must therefore disregard the "allegedly false material" and "supply any omitted information," *Escalera*, 361 F.3d at 744, to determine the content of the hypothetical corrected affidavit.

According to Officer Sorbo's affidavit, Ms. Berg engaged in three acts that might conceivably violate § 53a-167a. First, Ms. Berg allegedly removed from vehicles the parking tickets that Officer Sorbo had issued, and allegedly took tickets from individuals who had arrived to collect their vehicles. (Aff. at 3.) Second, Officer Sorbo allegedly learned, based on an interview with the tow truck driver, Mr. Conway (mistakenly identified as Mr. Connelly in the affidavit), that Ms. Berg had asked the tow truck driver not to leave the parking lot with the vehicle he had in tow because the mayor was "on her way there." (*Id*. at 4.) As a result, Mr. Conway awaited the arrival of the mayor, who then spoke with Mr. Conway's supervisor and arranged for all of the vehicles to be returned to the parking lot or to the vehicles' owners, free of charge. (*Id*.) Third, while at the police substation located on the beach, a woman allegedly approached Officer Sorbo regarding a ticket he had issued earlier in the day. He informed her that he could not take the ticket back without proof of residence and registration. (*Id*. at 5.) As the woman walked away, Ms. Berg allegedly stopped the woman and engaged her in

conversation.  The woman then allegedly handed the ticket to Ms. Berg, and both women left the beach area.  (*Id*. at 5-6.)

As noted, Ms. Berg denies the first act altogether.  She testified at her deposition that she never removed any tickets from any of the vehicles.  (Berg Dep. at 54:20-24, 56:4-12.)  Officer Sorbo concedes "that there is a factual dispute between the plaintiff and Officer Sorbo as to the accuracy of the statement in Officer Sorbo's affidavit that the plaintiff removed tickets from cars on July 19, 2009 and that for purposes of ruling on a motion for summary judgment the court must credit the plaintiff's version of events."  (Dkt. # 48-1, at 24.)[3]  Since Ms. Berg has submitted some evidence that Officer Sorbo's account of the first act was false, a corrected affidavit would exclude this act.

It would also exclude the third act.  Ms. Berg testified that she did not take the ticket from the woman on the beach.  Instead, she "saw the woman yelling and yelling. . . . [T]he woman came over to me and was yelling with the ticket -- threw the ticket, said she was going to rip the ticket, ripped part of the ticket and went crazy . . . ."  (Berg Dep. at 120:10-15.)  The woman then threw the ticket in Ms. Berg's face.  (*Id*. at 53:18-22.)  Officer Sorbo himself testified that "a woman came up yelling and screaming at me because I gave her a ticket and I wouldn't take it back."  (Sorbo Dep. at 28:6-9.)  He also gave testimony about this incident that conflicted with his case/incident report and affidavit, and he admitted that he wrote his description of this act incorrectly.  (*See* Sorbo Dep. at 37-38 (testifying that Ms. Berg took the ticket from the woman on the beach and admitting that his written description in the affidavit that the woman handed the ticket to Ms. Berg was incorrect).)  Ms. Berg has submitted enough evidence that Officer Sorbo's account of the third act was false to call for the exclusion of that act from the corrected affidavit.

---

[3] When asked about this act during his deposition, Officer Sorbo gave conflicting testimony.  (*See* Sorbo Dep. at 36:19-25, 37:1, 50:19-25, 51:1-4 (testifying at varying times that (1) Ms. Berg removed tickets from the vehicles; (2) Ms. Berg just took a ticket from a BMW; and (3) he could not recall Ms. Berg taking a ticket from a vehicle).)

The corrected affidavit thus narrows to a focus on the second act, i.e., Ms. Berg's interaction with the tow truck driver.  Although Ms. Berg disputes the version of her conversation with the tow truck driver set forth in the affidavit, she has not submitted any evidence that Officer Sorbo's report was false.  Nor could she.  The affidavit's description of the conversation between Ms. Berg and Mr. Conway is based entirely on Officer Sorbo's interview of Mr. Conway.  (Aff. at 4.)  Officer Sorbo did not hear the conversation.  (Sorbo Dep. at 16:10-18.)  There is no evidence in the record that Ms. Berg has any personal knowledge of what Mr. Conway told Officer Sorbo about the conversation that took place between her and Mr. Conway.  Because Ms. Berg has submitted no evidence that Mr. Conway did not make the statements to Officer Sorbo that were ultimately reported in the affidavit, there is no basis to exclude the second act from the corrected affidavit.  The issue is thus whether the facts in the affidavit relating to the second act are sufficient to support a finding of "arguable probable cause," the standard for establishing qualified immunity.  I find that they are not.

Officer Sorbo devoted only three sentences of his five-page affidavit to a description of Ms. Berg's interaction with the tow truck driver: "During this time [when tow trucks were removing vehicles], this affiant observed a civilian town employee, Erica Berg who workers [sic] as a secretary in the mayor's office, stop one (1) of the tow truck drivers, known to me as John [Conway]. . . . Mr. [Conway] stated that he was first approached by Erica Berg, prior to the mayor's arrival.  She asked him not to leave the area with the vehicle that he had in tow because the Mayor was on her way there."  (Aff. at 4-5.)

The affidavit does not elaborate on the statement that Ms. Berg "stop[ped]" a tow truck driver.  It does not indicate whether she stood in front of the tow truck's path, or hailed the tow truck driver to engage in conversation, or whether the tow truck driver, who knew Ms. Berg,

stopped on his own when he saw her approach.  (*See* Conway Aff at ¶ 9.)  There is also some evidence in the record – evidence of which Officer Sorbo would likely have known because it came from the tow truck driver, whom Officer Sorbo interviewed before preparing the affidavit – that Ms. Berg did not stop Mr. Conway, but that he was already stopped when she approached him.  (*Id*. ( "I started to tow a second or third car from the parking lot, and while that car was elevated on my tow truck but before I had towed it out of the parking lot, I was approached by Erica Berg . . . .").)

The arrest warrant affidavit similarly does not elaborate on Ms. Berg's request to Mr. Conway that he not leave the area.  As noted, Officer Sorbo did not hear the conversation, and thus, not surprisingly, the affidavit contains no information about the tone and the way in which Ms. Berg made this request.  Ms. Berg might have shouted the request or she might have asked politely, making clear that she would not try to prevent the tow.  The affidavit does not say.  It is also unclear from the affidavit whether the mayor arrived at Mr. Conway's truck within seconds of Ms. Berg's request, or whether Mr. Conway's delay in leaving the parking lot as a result of Ms. Berg's request stretched into minutes, or longer. [4]

Officer Sorbo urges the Court to focus on the version of the Berg–Conway conversation set forth in *Mr. Conway's* affidavit, which is more detailed and more suggestive of interference. In his affidavit, Mr. Conway states that after Ms. Berg asked him to put down the car he was towing, he told Ms. Berg that he believed he had a legal duty to do as the police instructed him and tow the car away, after which Ms. Berg "instructed" him not to leave the parking lot until the mayor's arrival.  (Conway Aff. at ¶¶ 7, 10-11.)  When the mayor arrived, Mr. Conway also told

---

[4] I do not intend any of this as criticism of Officer Sorbo.  The brevity of Officer Sorbo's description of Ms. Berg's interaction with the tow truck driver in the affidavit is understandable.  Not surprisingly, the affidavit focuses on the conduct of Mayor Capone Almon, who is not a party to this lawsuit.  Also, to the extent it discusses Ms. Berg, the affidavit devotes greater detail to the first and third acts.  More generally, it will be for a jury to decide whether Officer Sorbo did anything improper, and nothing I have said is meant to cast a shadow upon him.

her that he felt obligated to follow Officer Sorbo's order to tow the car.  (*Id.* at ¶¶ 7, 13.)  In the arrest warrant affidavit, however, Officer Sorbo reports only a single ask by Ms. Berg, and also reports that Mr. Conway stated that he had raised the need to fulfill Officer Sorbo's order only to the mayor, and not to Ms. Berg.  Because Officer Sorbo has moved for summary judgment, I am required to resolve this discrepancy in favor of Ms. Berg, crediting the shorter, murkier version of the conversation included in the arrest warrant affidavit.

In short, there are genuine issues of material fact as to the circumstances known to Officer Sorbo when he wrote the affidavit, including exactly what was said between Ms. Berg and Mr. Conway, how it was said, and the length of time Mr. Conway was delayed as a result of his interaction with Ms. Berg.  If all of these factual issues were resolved against Officer Sorbo and all related inferences were drawn in Ms. Berg's favor, then the evidence would be that Ms. Berg simply asked Mr. Conway, who was already stopped, if he would not mind holding off towing the car for a brief period until the mayor could speak with him.[5]  Such conduct would not amount to arguable probable cause to arrest Ms. Berg for violation of § 53a-167a, as that statute has been construed by the Connecticut Supreme Court.  Indeed, such innocuous conduct would likely fall farther outside the statute than "question[ing] a police officer's authority or protest[ing] his or her action," *Williams*, 205 Conn. at 472.[6]  For these reasons, I conclude that a reasonable jury, drawing all inferences in favor of Ms. Berg, could decide that it was objectively unreasonable for Officer Sorbo to believe that probable cause existed, and that officers of

---

[5] The version of the conversation offered by Ms. Berg, which Officer Sorbo would not have known when he authored his affidavit, is even milder.  She claims that she approached Mr. Conway and, in no way indicating that she was overriding Officer Sorbo's instructions, asked if he could "drop" the car if the families paid the "drop fee." (Berg. Dep. at 59-60; 56(a)(2) at ¶ 14.)

[6] Had the corrected affidavit been presented to a Superior Court judge, it is unlikely that the few sentences devoted to Ms. Berg's interaction with the tow truck driver would have convinced the judge to approve the application for Ms. Berg's arrest, especially when juxtaposed with the great detail with which the affidavit describes Mayor Capone Almon's acts.  The reviewing judge would have likely wanted to know more about the circumstances of the conversation between Ms. Berg and Mr. Conway.

reasonable competence would not disagree on whether the probable cause test was met.  I therefore cannot find on summary judgment that Officer Sorbo is entitled to qualified immunity, and I deny summary judgment as to Ms. Berg's § 1983 claims against Officer Sorbo for false arrest and malicious prosecution.

Officer Sorbo's entire motion for summary judgment focuses on the probable cause issue. There is no separate analysis of the state law claims or the First and Fourteenth Amendment claims.  I must thus deny summary judgment on those claims as well.  I grant summary judgment, however, as to Ms. Berg's conspiracy claim, which, under 42 U.S.C. § 1985, requires a "[c]onspiracy to interfere with civil rights" by "two or more persons."  As explained in my ruling following oral argument, Ms. Berg has submitted no admissible evidence that anyone other than Officer Sorbo knowingly violated her civil rights.

**V.**   **Conclusion**

Summary judgment is granted as to Ms. Berg's conspiracy claim against Officer Sorbo and denied as to all other claims against him.

IT IS SO ORDERED.

_____/s_____
Michael P. Shea, U.S.D.J.


Dated:        Hartford, Connecticut
              March 19, 2014

14